# ORIGINAL



Mark G Tratos (Bar No. 1086)
R. Richard Costello Of Counsel (Bar No. 1917)
Ronald D. Green Jr.(Bar No. 7360)
QUIRK & TRATOS
3773 Howard Hughes Parkway
Suite 500 North
Las Vegas, Nevada 89109
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

Counsel for BOYD GAMING CORPORATION

**UNITED STAT**

**DISTRI(**

CV-S-04-0156-RLH-LRL

BOYD GAMING CORPORATION, a Nevada corporation,

Plaintiff,

v.

PENTON MEDIA, INCORPORATED, an entity of unknown origin; THE GOLDEN GROUP I, INCORPORATED, an entity of unknown origin, RICH HARRISON, an individual,

Defendants.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

(1) Cybersquatting under 15 U.S.C. § 1125(d)
(2) Trademark Infringement under 15 U.S.C. § 1114
(3) Unfair Competition under 15 U.S.C. § 125(a)
(4) Trademark Dilution under 15 U.S.C. § 1125(c)
(5) Common Law Trademark Infringement
(6) Deceptive Trade Practices under N.R.S. 598.0903, et seq.
(7) Intentional Interference with Prospective Economic Advantage

For its complaint against Defendants, and each of them, Plaintiff complains and alleges as follows:

## NATURE OF ACTION

This is an action for trademark infringement, dilution and unfair competition under federal statutes, with pendent claims for common law trademark infringement, state deceptive trade practices, and intentional interference with prospective economic

1.

COMPLAINT

1  advantage. Plaintiff seeks damages, attorneys' fees, costs, and preliminary and permanent injunctive relief.

## JURISDICTION

1. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§1331 and 1338(a). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

2. This Court has personal jurisdiction over Defendants based upon the following: (a) they operate a web site on the Internet that is accessible to residents of the State of Nevada; (b) the web site is an interactive online business; and (c) Defendants committed tortious acts that they knew or should have known would cause injury to Plaintiff in the State of Nevada.

3. Venue is proper in the United States District Court for the District of Nevada under 28 U.S.C. § 1391(b) and (c). Venue lies in the unofficial Southern Division of this Court.

## PARTIES

4. Plaintiff Boyd Gaming Corporation is a Nevada corporation which through its subsidiary, Mare-Bear, Incorporated, owns and operates the "Stardust Resort Hotel and Casino" ("Stardust") in Las Vegas, Nevada.

5. Defendant Penton Media, Incorporated ("Penton") is a business entity of unknown origin that, upon information and belief, operates in Cleveland, Ohio.

6. Defendant The Golden Group I, Incorporated, ("Golden Group") is a business entity of unknown origin that, upon information and belief, operates in Golden, Oregon.

7. Defendant Rich Harrison ("Harrison") is an individual who upon information and belief is a Domain Name broker.

## ALLEGATIONS COMMON TO ALL COUNTS

8. Plaintiff Boyd Gaming Corporation, through its wholly owned subsidiary, owns and operates the Stardust Hotel and Casino in Las Vegas, Nevada.

///

2.

COMPLAINT

1    9.   The "Stardust" is a famous destination resort hotel casino located on the world-renowned "Strip" in Las Vegas, Nevada.

10.  Since before its opening in 1958, the Stardust has continuously used the marks STARDUST in connection with advertising and promoting its property in the United States and around the world.  The STARDUST names and marks are among the most recognized and respected names in the gaming industry.  In fact, the STARDUST name has become famous in the casino industry.  Boyd Gaming Corporation and the Stardust Resort Hotel and Casino have spent substantial sums of money to advertise and promote the STARDUST marks in print, broadcast media and on the Internet through the Stardust web site, accessible throughout the United States and around the world at <stardustlv.com>.  A true and correct copy of the home page for the Stardust's web site is attached hereto as Exhibit 1 and is incorporated by this reference.  In addition, the Stardust has made extensive use of the STARDUST marks on, among other things, signage, wearing apparel, souvenirs and promotional materials.

11.  Plaintiff Boyd Gaming Corporation is the exclusive owner of the marks STARDUST and variants thereto (the "Stardust Marks") which have been granted federal mark registrations, including but not limited to:

(a)  STARDUST for hotel services (U.S. Reg. No. 1,580,234); and

(b)  STARDUST for casino services (U.S. Reg. No. 1,580,234).

None of these federal trademark registrations have been abandoned, canceled or revoked.

12.  Based on its license agreement and extensive use, the Stardust owns the exclusive right to use the STARDUST Marks in connection with hotel, casino and related services.

13.  The uniqueness of the Stardust resort hotel casino and the extensive advertising and promotion of the "Stardust" have resulted in the STARDUST names and marks being distinctive and famous for resort hotel casino services.

14.  On or about September 17, 2002, Defendant Penton registered the <stardust.com> Internet domain name (the "Infringing Domain Name") with Network

3.

COMPLAINT

Solutions Incorporated, a registrar for domain names. This domain name contains Plaintiff's famous STARDUST trademarks.

15. Some time after registration, Defendant linked the Infringing Domain Name to an active online web site at <ispcon.com>. A true and accurate copy of the home page for the <ispcon.com> web site is attached hereto as Exhibit 2 and is incorporated by reference. The domain name <ispcon.com> is owned by Defendant Golden Group.

16. Subsequent to the registration of the Infringing Domain name and its linking to Defendant Golden Group's web site, Defendant Harris contacted Plaintiff with an offer to sell the Infringing Domain Name for $500,000.

17. By registering and/or a using domain name containing Plaintiff's trademarks, Defendants were and are attempting to trade on the goodwill of Plaintiff.

18. By registering and/or using a domain name containing Plaintiff's trademarks, Defendants were and are attempting to create an association between the Infringing Domain Name and the Plaintiff's famous trademarks.

19. By offering to sell, transfer or assign the Infringing Domain Name for money without a bona fide prior use or intent to use, the Defendants were attempting to capitalize on the goodwill of Plaintiff.

20. Plaintiff's marks at issue in this case were distinctive at the time Defendants registered the Infringing Domain Name.

21. Upon information and belief, the Defendants registered the Infringing Domain Name with the bad faith intent to profit from Plaintiff's marks.

22. Upon information and belief, the Defendants have no trademark or other intellectual property rights in the Infringing Domain Name.

23. Upon information and belief, the Defendants had no prior use of the Infringing Domain Name in connection with the bona fide offering of any goods or services.

24. Upon information and belief, the Defendants intended to divert customers from the Plaintiff's web sites to a site accessible under the domain name in a manner that could harm the goodwill represented by Plaintiff's marks.

4.

COMPLAINT

25. Plaintiff's marks incorporated in Defendants' domain name are distinctive and famous.

26. Upon information and belief, Defendants did not believe or have reasonable grounds to believe that the use of the Infringing Domain Name was a fair use or otherwise lawful.

**FIRST CLAIM FOR RELIEF**
(Cybersquatting under the
Lanham Act, 15 U.S.C. § 1125(d))

27. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

28. Defendants have registered, trafficked in, and/or a used domain name that is identical or confusingly similar to and/or dilutive of Plaintiff's trademarks, which were distinctive and/or famous at the time of registration of the domain name.

29. Upon information and belief, Defendants have or had a bad-faith intent to profit from Plaintiff's trademarks.

30. As a direct and proximate result of such conduct, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**SECOND CLAIM FOR RELIEF**
(Trademark Infringement under
the Lanham Act, 15 U.S.C. § 1114)

31. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

32. Defendants have used and/or are using in commerce a domain name which contains Plaintiff's trademarks, and, thus is confusingly similar to Plaintiff's names and trademarks.

33. Defendants' use in commerce of Plaintiff's marks and/or a mark confusingly similar to Plaintiff's trademarks for Defendants' services, and Defendants' use of Internet domain name and associated web sites identified in the Allegations Common to All Counts section above, constitutes a reproduction, copying, counterfeiting, and colorable imitation of

1 Plaintiff's trademarks in a manner that is likely to cause confusion or mistake or is likely to deceive consumers.

34. By using Plaintiff's marks and/or marks confusingly similar to Plaintiff's trademarks with the knowledge that Plaintiff owns and has used, and continues to use its trademarks in Las Vegas, across the United States, and around the world, Defendants have intended to cause confusion, cause mistake, or deceive consumers.

35. Defendants are using marks identical and/or confusingly similar to Plaintiff's trademarks in connection with the sale, offering for sale or advertising of services in a manner that is likely to cause confusion, or to cause mistake, or to deceive consumers as to affiliation, connection, or association with Plaintiff or as to the origin, sponsorship, or approval of Defendant's services or commercial activities by Plaintiff.

36. Defendants' use of Plaintiff's marks and/or marks confusingly similar to Plaintiff's trademarks has created a likelihood of confusion among consumers who may falsely believe that Defendants' businesses or web sites are associated with Plaintiff's resort hotel casinos or that Plaintiff sponsors or approves of Defendants' services or commercial activities.

37. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**THIRD CLAIM FOR RELIEF**
(Unfair Competition under the
Lanham Act, 15 U.S.C. § 1125(a))

38. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

39. Defendants' use in commerce of marks identical and/or confusingly similar to Plaintiff's trademarks in connection with Defendants' services, web site, and Internet domain name, constitutes a false designation of origin and/or a false or misleading description or representation of fact, which is likely to cause confusion, cause mistake, or deceive as to affiliation, connection, or association with Plaintiff, or as to the origin,

COMPLAINT

6.

1 sponsorship, or approval of Defendants' services or commercial activities by Plaintiff.

2 40. Defendants' use in commerce of Plaintiff's marks and/or marks confusingly similar to Plaintiff's trademarks with the knowledge that Plaintiff owns and has used, and continues to use, its trademarks constitutes intentional conduct by Defendants to make false designations of origin and false descriptions about Defendants' services and commercial activities.

41. As a direct and proximate result of such unfair competition, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business, reputation, and goodwill.

**FOURTH CLAIM FOR RELIEF**
(Trademark Dilution under the
Federal Anti-Dilution Act, 15 U.S.C. § 1125(c))

42. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

43. Through their adoption and consistent and extensive use, Plaintiff's trademarks have acquired fame and distinction.

44. Defendants began using marks identical and/or confusingly similar to Plaintiff's trademarks in connection with Defendants' services, web site and Internet domain name after Plaintiff's trademarks became famous.

45. Defendants' use of Plaintiff's marks and/or a mark confusingly similar to Plaintiff's trademarks has caused and will cause dilution of the distinctive quality of Plaintiff's trademarks and will otherwise cause irreparable injury to Plaintiff's business, reputation, and goodwill.

46. As a direct and proximate result of Defendants' dilution of Plaintiff's marks, Plaintiff has suffered, and will suffer, irreparable injury to its business, reputation, and goodwill.

///

///

///

7.

COMPLAINT

**FIFTH CLAIM FOR RELIEF**
(Common Law Trademark Infringement)

47. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

48. By virtue of having used and continuing to use its trademarks, Plaintiff has acquired common law rights in those marks.

49. Defendants' use of marks identical and/or confusingly similar to Plaintiff's trademarks infringes Plaintiff's common law rights in its trademarks, and this use is likely to cause confusion, mistake, or deception among consumers, who will believe that Defendants' services, web site and/or Internet domain name originates from, or is affiliated with, or endorsed by Plaintiff when, in fact, it is not.

50. As a direct and proximate result of Defendants' infringement of Plaintiff's common law trademark rights under Nevada and other common law, Plaintiff has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill.

**SIXTH CLAIM FOR RELIEF**
(Deceptive Trade Practices
under N.R.S. § 598.0915)

51. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

52. Upon information and belief, in the course of conducting their business, Defendants knowingly made false representations as to affiliation, connection and/or association with Plaintiff by using a mark confusingly similar to Plaintiff's trademarks and otherwise engaged in deceptive trade practices.

53. As the direct and proximate result of Defendants' conduct, Plaintiff has suffered, and will continue to suffer, monetary damages and irreparable injury to its business, reputation, and goodwill.

/ / /

/ / /

8.

COMPLAINT

## SEVENTH CLAIM FOR RELIEF
(Intentional Interference with Prospective Economic Advantage)

54. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

55. Upon information and belief, at the time Defendants adopted and began using Plaintiff's name and marks and since that time, Defendants knew and have known that Plaintiff is in the business of providing resort hotel and, particularly, casino services.

56. Upon information and belief, Defendants committed acts intended or designed to disrupt Plaintiff's prospective economic advantage arising from advertising and/or providing these services.

57. Defendants' actions have disrupted or are intended to disrupt Plaintiff's business by, among other things, diverting web users away from Plaintiff's web sites.

58. Defendants have no legal right, privilege or justification for their conduct.

59. As a direct and proximate result of Defendants' intentional interference with Plaintiff's prospective economic advantage, Plaintiff has suffered, and will continue to suffer, monetary damages and irreparable injury.

60. Based on the intentional, willful and malicious nature of Defendants' actions, Plaintiff is entitled to recover exemplary damages and reasonable attorneys' fees and costs incurred in connection with this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court grant the following relief:

A. A preliminary and permanent injunction prohibiting Defendants, their respective officers, agents, servants, employees and/or all persons acting in concert or participation with him, from: (1) using Plaintiff's trademarks or confusingly similar variations thereof, alone or in combination with any other letters, words, letter strings, phrases or designs, in commerce or in connection with any business or for any other purpose (including, but not limited to, on web sites and in domain names); and (2) registering, owning, leasing, selling, or trafficking in any domain names containing Plaintiff's trademarks

1 or confusingly similar variations thereof, alone or in combination with any other letters, words, phrases or designs;

B. A preliminary and permanent injunction requiring the current domain name registrar to transfer the <stardust.com> domain name to Plaintiff;

C. An award of compensatory, consequential, statutory, and punitive damages to Plaintiff in an amount to be determined at trial;

D. An award of interest, costs and attorneys' fees incurred by Plaintiff in prosecuting this action; and

E. All other relief to which Plaintiff is entitled.

DATED: February 9, 2004.

QUIRK & TRATOS

Mark G. Tratos (Bar No. 1086)
R. Richard Costello, Of Counsel (Bar No. 1917)
Ronald D. Green, Jr. (Bar No. 7360)
3773 Howard Hughes Parkway
Suite 500 North
Las Vegas, Nevada 89109
Counsel for BOYD GAMING CORPORATION

10.

COMPLAINT

# EXHIBIT 1



**Upcoming Entertainment**

## STARDUST INVITATIONAL HANDICAPPING TOURNAMENT- WINNER TAKES ALL!!

EVERY FRIDAY @ 9PM
$10,000 GRAND PRIZE

**Championship match on December 19th!**



**11/12 - 11/15**

**Tim Conway and Harvey Korman**

Click here for future performances

**Click Here For SPECIAL OFFERS!**

**BOOK ROOM ONLINE**

### NEWS: STARDUST INVITATIONAL HANDICAPPING TOURNAMENT - FRIDAYS AT 9PM ---$10,000 GRAND PRIZE

Call 866-642-3120 or 702-732-6111 for Room Reservations

Home Contact Tools Site Map Employment History Boyd Gaming Corporation

Copyright © 2002 Stardust Resort and Casino - Las Vegas • All Rights Reserved

# EXHIBIT 2

ISPCON: Welcome to ISPCON

# 10th ANNUAL ISPCON

- REGISTER NOW!
- EXHIBITORS ONLY
- PRESS ROOM

**October 27, 2003**

Now in its 10th year, ISPCON is THE definitive event for wired and wireless ISPs.

It's the place where service providers come together to meet, learn, find new products and services and improve their businesses.

The full conference grid is almost complete and online now. Check it out today to discover what you'll learn at ISPCON Fall 2003!

If you're wondering who should attend? Wonder no more... click here.

**REGISTER BEFORE OCTOBER 1st**
**SAVE $100 on full conference!**
**CLICK HERE TO REGISTER**

ISPCON is packed with more valuable sessions dedicated to delivering wireless Internet services than any other event on the market.

**Full-day WISP Workshop: Sunday**

**ENDORSING ASSOCIATIONS:**



**MEDIA PARTNERS:**

ISP-Planet.com

Event Archives

## SPEAKER FORUMS:

Interested in Speaking? Visit to view the Call for Papers and submit your proposal.

Search the Site: [go]

### In the News

- Responsys Adds Deep Analytics
- Microsoft Outlook 2003 Puts Open Rates in Question
- AT&T, BellSouth Back at the Table
- Cablevision Revises Spinout Plan
- Macromedia Flashes $65M In Front of eHelp
- Sprint Trims Management Ranks
- Senate Anti-Spam Bill Ups Ante for House Action
- Qwest Sues AT&T CEO Staying Put
- Governors Oppose Permanent Internet

Co-Produced by: **JupiterMedia**





NEW FOR FALL
FULL-DAY WISP WORKSHOP
SUN. OCT. 19
MORE INFO

**SAVE THE DATE!**
**ISPCON FALL 2003**
Oct. 20-22 | Santa Clara Convention Center
Mark your calendar now! | Santa Clara, CA

Free book offer with registration!

Get the details on how ISPCON is delivering on wireless for you...

They can keep competition out of the RBOC and Cable networks, but they can't stop an Internet maverick from fighting back with a new technology.

There are numerous vendors lining up with technologies specifically designed to help you execute on your wireless roll-out, and plenty of existing WISPs to learn from and talk with during the show.

See how ISPCON stacks up against the others.

Access Tax Exemption

Free CRM for Everyone!

 **Viewpoint:**

Voice over IP goes mainstream

Advancing the ISP conversation

10 ways to save your ISP

Idiots delight on the animal farm

Looking for new services? Look to new software

**White Papers:**

5 Steps to Selecting Your Outsourcing Vendor

Wireless Security- Extending Access to the Road Warrior

City of Minneapolis Looks to Outsourcing to Improve IT Management

Wireless Internet using 2.4 GHz

Maximizing Network Performance: The Case for Fixed Wireless Connectivity

Implementing 802.16 IEEE Standard



Forums:
- Clueful News
- IP Multicast List

Weblogs:
- The Official ISPCON Wiki
- Scott Mace
- Dewayne-Net
- Doug Kaye's Web Hosting Strategies
- Robert Shaw

Developed by: FUZ interactive

s3sm by E-com Media Group

© 2003 The Golden Group. All rights reserved.

Co-produced by: THE GOLDEN GROUP  Jupitermedia